# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3832

_____

Robert Karlix,                                    *
                                                  *
              Appellant,                          *
                                                  *   Appeal from the United States
       v.                                         *   District Court for the
                                                  *   Southern District of Iowa.
Jo Anne B. Barnhart, Commissioner                 *
of Social Security,                               *
                                                  *
              Appellee.                           *

_____

Submitted: May 17, 2006
Filed: August 3, 2006

_____

Before WOLLMAN, BRIGHT, and BOWMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

       Robert Karlix appeals from the district court's[1] order affirming the final decision of the Commissioner of Social Security (Commissioner), which denied his applications for benefits. We affirm.

_____

       [1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

# I.

On March 28, 2002, Karlix was admitted to the Trinity Medical Center (Trinity) for substance abuse treatment. On April 29, 2002, he returned to Trinity, complaining of bilateral calf tightness and a "pins and needles" sensation in both of his feet after walking three blocks. Afzal H. Abdullah, M.D., examined Karlix and concluded that he suffered from severe arterial insufficiency bilaterally. Dr. Abdullah measured Karlix's ankle-brachial index (ABI), which is a basis on which to diagnose or determine the severity of peripheral arterial disease, and observed that he had an ABI of 0.47 on the right and 0.38 on the left.

On May 8, 2002, Mary Jo Bloominger, PAC (physician's assistant, certified), examined Karlix, who again complained of pain in his legs. Karlix reported that although he had suffered some pain while walking since 1996, the pain had been much worse during the past month. Physician's Assistant Bloominger concluded that Karlix suffered from peripheral arterial disease and referred him to the University of Iowa vascular surgery department for evaluation and possible surgery.

Between April 29, 2002, and February 20, 2003, Karlix saw doctors or physician's assistants at Trinity, Community Health Care, and the University of Iowa numerous times, complaining of claudication. His ABI was consistently below 0.50 on both the right and the left. Despite repeated recommendations by Lisa Nelson, PAC, Karlix failed to follow his low-cholesterol and low-fat diet, delayed seeing a dietitian, failed to take his medication, and continued to smoke about three-fourths of a package of cigarettes per day.

Finally, on February 21, 2003, Karlix underwent aortobifemoral bypass surgery. Subsequent vascular studies showed an ABI of 0.54 on the right and 0.76 on the left. Karlix was discharged on February 28, 2003, with instructions to lift no more than five to ten pounds for the next four to six weeks. In October 2003, Karlix reported

that his pain had improved following surgery but that about two and a half months after surgery the pain had returned.  There is no evidence in the record, however, that his ABIs ever fell below 0.50 following his February 2003 surgery.  On November 5, 2003, Physician's Assistant Nelson determined that Karlix had suffered a hernia, and he underwent surgery for this on March 17, 2004.

Throughout 2003 and 2004, Physician's Assistant Nelson, Lawrence Staples, M.D., and Iqbal Hussain, M.D., completed physical residual functional capacity questionnaires for Karlix.  Physician's Assistant Nelson and Dr. Hussain indicated that Karlix had the ability to work, and each of them imposed only modest lifting, walking, crouching, and climbing restrictions.

On October 4, 2002, Karlix applied for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, alleging inability to work because of a disabling condition.  He alleged an onset date of August 1, 2001.  The Commissioner denied Karlix's applications for benefits.

On August 6, 2003, Karlix appealed the Commissioner's denial of benefits and requested an administrative hearing.  At the hearing, Karlix testified that he was unable to work because of his condition beginning in August 2001, but he conceded that he had not sought medical treatment for his condition until April 2002.  Karlix then amended his alleged onset date to June 30, 2002.  Karlix also testified that from August 2003 to June 2004 he had been employed in a work-for-rent program with the Salvation Army, where he had worked for thirty-two hours per week.  Karlix stated that he had quit this job because he had experienced difficulty doing it and because his doctor had advised him to quit.

The administrative law judge (ALJ) concluded that Karlix did not qualify for benefits because he did not meet the Act's definition of disabled.  The ALJ stated that

there was no evidence that Karlix's impairments met or equaled any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404. She also determined that considering the medical evidence, Karlix's subjective complaints of pain, Karlix's failure to quit smoking, and the fact that Karlix's testimony about his alcohol consumption was inconsistent with medical documentation, Karlix had the residual functional capacity for a full range of sedentary activity on a sustained basis. Further, the ALJ concluded that the Commissioner had proved that there were jobs in significant numbers that Karlix could perform consistent with his impairments. The district court affirmed the ALJ's decision.

## II.

We review *de novo* the district court's affirmance of the Commissioner's denial of benefits, considering whether the ALJ's determination is supported by substantial evidence on the record as a whole. Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006). In examining the evidence, we must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996).

To establish a claim for benefits, a claimant must show that he is disabled, meaning that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In making this determination, the Commissioner must sequentially consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether he has a medically severe impairment that meets the duration requirement, and (3) whether his impairment meets or equals one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404 and meets the duration requirement. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goff v. Barnhart, 421 F.3d 785, 789-90 (8th Cir. 2005); 20 C.F.R. § 404.1520. If the claimant satisfies

-4-

each of these three elements, the claimant is conclusively presumed to be disabled. Bowen, 482 U.S. at 141. If the impairment is not one that meets or equals one of the listings, the Commissioner must determine whether the impairment prevents the claimant from performing work that he has performed in the past or whether he is able to perform other work in the national economy in view of his age, education, and work experience. Id. at 141-42.

## A.

Karlix first argues that the ALJ erred by failing to consider evidence of a listing-level impairment. Karlix alleges that he satisfied the requirements for the § 4.12.B.1 listing for peripheral arterial disease from at least April 29, 2002, to February 21, 2003. For a claimant to meet the § 4.12.B.1 listing, he must show that he suffers from "[i]ntermittent claudication with marked impairment of peripheral arterial circulation as determined by Doppler studies showing" a resting ABI of less than 0.50. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.12.B.1.

Contrary to Karlix's assertion, the ALJ did consider evidence of a listed impairment and concluded that there was "no showing on this record that the claimant's impairments, whether considered singly or in combination, meet or are equivalent to any of the listed impairments." Administrative R. at 15. The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003); see also Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review.").

Even if the ALJ erred in determining that Karlix failed to meet the listing requirement between April 29, 2002, and February 21, 2003, the error was harmless because the evidence fails to show that he met the listing for the required twelve

months. Karlix alleged an onset date of June 30, 2002, and there is no evidence in the record to support a finding that the actual onset date occurred prior to the alleged date. Additionally, Karlix's condition improved after his vascular surgery on February 21, 2003, and vascular laboratory studies following surgery showed that his ABI had improved to 0.54 on the right and 0.76 on the left. Accordingly, Karlix failed to demonstrate that he suffered from a listed impairment for a continuous twelve-month period.

**B.**

Karlix next argues that the ALJ erred by failing to obtain expert testimony on a medically reasonable date of onset. In determining the date of onset of a disability, the ALJ should consider the claimant's alleged date of onset, his work history, and the medical and other evidence if his condition. Grebenick v. Chater, 121 F.3d 1193, 1200 (8th Cir. 1997); Social Security Ruling 83-20 (Social Security Administration 1983). "[T]he date alleged by the individual should be used if it is consistent with all the evidence available." Social Security Ruling 83-20. If the medical evidence regarding onset is ambiguous, however, the ALJ should obtain an expert opinion from a medical advisor to determine a medically reasonable date of onset. See Grebenick, 121 F.3d at 1200-01; see also Social Security Ruling 83-20.

At his administrative hearing, Karlix testified that he was unable to work because of his condition beginning in August of 2001. He acknowledged, however, that he did not seek any medical treatment for his condition prior to April of 2002, and the record is void of any other evidence suggesting an earlier date of onset. See, e.g., Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (holding that an ALJ may properly take into account that a claimant failed to make significant efforts to seek medical treatment). When coupled with the amended onset date and the ALJ's determination that Karlix was not particularly credible, the evidence was unambiguous as to the

onset date, and thus the ALJ did not err in failing to obtain an expert opinion on the matter.

**C.**

Next, Karlix argues that the ALJ erred by failing to consider a closed period of disability. Specifically, Karlix contends that nothing in the record indicates that the ALJ considered the evidence or implications of claudication with ABIs of less than 0.50, which constitutes clinical evidence that Karlix met the listing at §4.12.B.1 of Appendix 1 to 20 C.F.R. Part 404 from at least April, 29, 2002, to February 21, 2003. In making this argument, Karlix essentially reiterates the two arguments previously discussed.

For the reasons already stated, we conclude that the ALJ sufficiently considered evidence of a listed impairment between April 29, 2002, and February 21, 2003. By itself, any impairment during this time failed to meet the duration requirement for the Act's definition of disabled. Further, taking into account the ALJ's discussion of evidence regarding Karlix's residual functional capacity, we conclude that substantial evidence supports her determinations that Karlix could perform a full range of sedentary activity on a sustained basis and that Karlix failed to demonstrate that he was disabled within the meaning of the Act.

**D.**

Finally, Karlix argues that the ALJ erred in discrediting Karlix's testimony. Although "ALJs must seriously consider a claimant's testimony about pain, even when it is wholly subjective[,] . . . questions of credibility are for the [ALJ] in the first instance. If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990); see also Grebenick, 121 F.3d at 1200 ("[W]e will not

disturb the ALJ's credibility determinations."). In the present case, the ALJ found Karlix unreliable because his testimony at the administrative hearing regarding his consumption of alcohol conflicted with medical documentation. This was a sufficient reason for discrediting Karlix, and we defer to the ALJ's judgment on this issue.

The judgment is affirmed.

_____