# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4110

_____

Joanne M. Hacker,                    *
                                     *
          Appellant,                 *
                                     *
     v.                              *     Appeal from the United States
                                     *     District Court for the District of
Jo Anne B. Barnhart,                 *     Minnesota.
Commissioner, Social                 *
Security Administration,             *
                                     *
          Appellee.                  *


_____

Submitted: June 16, 2006
Filed: August 25, 2006

_____

Before SMITH, HEANEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.


     Joanne Hacker appeals the district court's[1] order granting the Commissioner summary judgment and thereby affirming the earlier denial of Social Security disability insurance benefits that Hacker sought. Hacker claims that the administrative

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, adopting the report and recommendation of Magistrate Judge Franklin L. Noel.

law judge's ("ALJ") decision denying benefits was unsupported by substantial evidence because the ALJ misweighed the testimony of various physicians. She also argues that the ALJ posed an inaccurate hypothetical question to the vocational expert who testified at Hacker's second hearing. We affirm.

## I. BACKGROUND

Hacker is a forty-eight-year-old woman who has suffered from a number of physical and mental ailments, including uncontrollable diarrhea, numerous digestive disorders, significant fatigue and depression. She has also been treated for fibromyalgia. As a result, Hacker sought disability benefits.

Hacker had two separate hearings before the ALJ. In November 2002, Hacker testified in detail about her condition. Dr. Andrew Steiner testified that several physical and mental maladies would limit Hacker to light work with ready access to bathroom facilities. A vocational expert ("VE") also testified. In response to the ALJ's hypothetical question, the VE testified that Hacker could not do her past relevant work as a teacher and teacher's aide. Nevertheless, according to the VE, Hacker could perform several other occupations under the hypothetical conditions posed by the ALJ. The ALJ therefore denied Hacker's application for disability benefits. Hacker appealed to the Appeals Council, which denied her request for review. Hacker then sought review in the district court. Based upon a stipulation between the parties, the district court remanded the case again to the Social Security Administration. The matter was ultimately remanded to the ALJ for further consideration of the impact of Hacker's need for ready access to restroom facilities.

On remand, Hacker testified before the ALJ again in March 2004. She testified that she had stopped working due to her ailments. However, the ALJ found her

testimony not to be credible in several respects because her ability to undertake certain daily activities contradicted her own testimony that she was unable to work. Mr. David Moll, a mental therapist, and Dr. Simon Mittal submitted opinions outlining her medical disabilities, as well as their beliefs that Hacker was incapable of sustained employment. The ALJ dismissed those opinions, however, because he found that they were inconsistent with substantial evidence in the record and because the opinions contradicted Moll's and Mittal's own treatment notes in important respects. Another VE testified. This time, the VE testified that an individual who was restricted to semi-skilled light work with ready access to restroom facilities could still work as a teacher's aide, Hacker's past relevant work. The VE further testified that Hacker was unemployable if her physical and mental abilities were limited to the degree that Moll and Mittal opined they were. Nevertheless, having already dismissed the testimony of Moll and Mittal, the ALJ relied upon the VE's testimony indicating that Hacker could perform her past relevant work. Accordingly, the ALJ denied her application for disability benefits. The district court upheld that decision when it granted the Commissioner summary judgment, and Hacker timely appealed.

## II.    DISCUSSION

We review de novo the district court's decision to uphold the ALJ's denial of disability benefits. *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005). Our review is limited, however, to determining whether the ALJ's findings were supported by substantial evidence. *Id.* Substantial evidence exists if, "on the record as a whole . . . [there is] evidence which a reasonable mind would find adequate to support the [ALJ's] findings." *Id.* It the ALJ's task to resolve conflicts in the evidence and issues of credibility. *Stephens v. Shalala*, 46 F.3d 37, 39 (8th Cir. 1995) (per curiam).

Ultimately, this Court will disturb the ALJ's decision only if it falls outside the available "zone of choice." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). A decision is not outside that "zone of choice" simply because we may have reached a different conclusion had we been the fact finder in the first instance. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently.") (citation omitted).

The ALJ employed the familiar five-step process to determine whether an individual is disabled:

> The five part test is as follows: 1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work.

*Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003); *see also* 20 C.F.R. § 416.920.

In this case, the ALJ found that Hacker was not gainfully employed and had an impairment that significantly limited her ability to perform basic work activities, steps one and two of the five-step test. Hacker conceded that she produced insufficient evidence showing that her impairments met or equaled the characteristics of a listed medical condition, thereby failing step three of the five-step test. Accordingly, only the fourth and fifth steps are in dispute—i.e., whether Hacker is capable of doing her past relevant work or whether she can perform some other job that is present in the national economy. Based upon the testimony of a VE, the ALJ found that she was capable of both.

Hacker argues that the ALJ impermissibly discounted the testimony of two treating physicians; that even if the ALJ were entitled to discount that testimony, the regulations required the ALJ to contact the physicians first; and that in any event the ALJ should not have substituted the testimony of certain non-treating physicians. Hacker also argues that the hypothetical question posed to the VE who testified at Hacker's hearing was incomplete to the extent that it did not incorporate the opinions of Hacker's treating physicians.

## A.      ALJ's Consideration of the Treating Physicians' Opinions

Hacker argues that the ALJ's decision was unsupported by substantial evidence, as it impermissibly discounted the opinions of two treating physicians. A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give a treating physician's opinion controlling weight. *Id.*; *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (treating physician's opinion does not automatically control because record must be evaluated as a whole); *Ellis*, 392 F.3d at 994 (noting that the final residual functioning capacity determination is left to the ALJ). For a treating physician's opinion to have controlling weight, it must be supported by medically acceptable laboratory and diagnostic techniques and it must not be "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions. *See, e.g.*, *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). We have allowed an ALJ to substitute the opinions of non-treating physicians in several instances, including where a treating physician "renders inconsistent opinions that undermine the credibility of such opinions." *Id.; see also Goetz v. Barnhart*, No. 05-2267, slip op. at 2 (8th Cir. June 2, 2006) (unpub.

per curiam) (declining to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her residual functioning capacity assessment).

Hacker complains that the ALJ impermissibly discounted the opinions of Moll and Mittal.[2] Moll spoke with Hacker periodically beginning in early 2001. Moll opined before the ALJ that Hacker had "poor to no ability to maintain attention and concentration or function independently." The ALJ found, however, that Moll's opinion was inconsistent with other substantial evidence, as "the record and [Hacker's] own testimony shows that [Hacker] has the capacity to follow TV shows and her son's sporting events, plan and maintain three gardens, drive a car, and fly to Denver to babysit her young nieces on a regular basis." The ALJ concluded that "[t]hese activities are not consistent with a marked limitation of function in concentration, persistence or pace."

Dr. Mittal was Hacker's physician at least as early as 2000 and continuing until 2003. Mittal advised Hacker with respect to her many physical ailments, administered various treatments and consistently admonished Hacker to exercise to improve her condition. Mittal completed residual functional capacity ("RFC") questionnaires in October 2002 and March 2003 indicating that Hacker was "limited to lifting 10 pounds, walking two city blocks, sitting six hours and standing/walking a total of two hours in an eight hour workday but only 30 minutes at a time" and that Hacker "has significant limitations in reaching, handling, fingering, stooping, and crouching

---

[2]In her briefs on appeal, Hacker does not challenge the ALJ's decision to discount the opinion of another treating source, Dr. Samuel Yue. Therefore, we do not address the ALJ's decision to discount Dr. Yue's opinion. "A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985); *see* Fed. R. App. P. 28(a).

activities, would frequently require unscheduled breaks, would likely miss more than four days per month due to symptoms, and is incapable of even 'low stress' jobs."

As with Moll, however, the ALJ found that Mittal's opinion was inconsistent with the record as a whole. The ALJ pointed out that Mittal testified in June 2001 that Hacker was only temporarily disabled. The ALJ also noted that Mittal reported that Hacker responded positively to pain treatment and that Mittal's treatment record was spotty because he treated Hacker sporadically after she began seeing another doctor before March 2002. Finally, the ALJ held that Mittal's "opinion that [Hacker] has very strict physical limitations is inconsistent with his repeated admonitions to [Hacker] that she needs to exercise more to improve her condition."

Having reviewed the record and the ALJ's reasoning, we cannot say his decision lies outside the available zone of choice. We cannot say that the ALJ was in error when he opined that Moll's assessment that Hacker was unable to concentrate or function was inconsistent with Hacker's daily activities. Nor can we say that the ALJ erred when he found that Mittal's opinion concerning Hacker's intolerance for even minor physical exertion was inconsistent with his frequent admonition that she should exercise more often. The regulations specifically require the ALJ to assess the record as a whole to determine whether the treating physicians' opinions are inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ did so and diminished the weight given the treating physicians' opinions for reasons we have approved previously.

Hacker argues in the alternative that, even if the treating physicians' opinions were inconsistent with their treatment notes and their previous medical advice to Hacker, the ALJ was required to contact the physicians to clarify their opinions. While the regulations provide that the ALJ should recontact a treating physician in some circumstances, 20 C.F.R. § 404.1512(e), that requirement is not universal. The

regulations provide that the ALJ should recontact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the applicant is actually disabled. 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician . . . is inadequate for us to determine if you are disabled . . . [w]e will . . . recontact your treating physician . . . to determine whether the additional information we need is readily available."). The regulations do not require an ALJ to recontact a treating physician whose opinion was inherently contradictory or unreliable. This is especially true when the ALJ is able to determine from the record whether the applicant is disabled. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (holding that there is no need to recontact a treating physician where the ALJ can determine from the record whether the applicant is disabled). In this case, the issue was not whether the treating physicians' opinions were somehow incomplete. The ALJ found them refuted by the record and the treating physicians' own earlier opinions and advice. The ALJ was under no obligation to recontact the treating physicians under such circumstances.

Finally, Hacker argues that the ALJ should not have based his decision upon the opinions of non-treating physicians and that doing so here was especially erroneous because the non-treating physicians lacked access to all the information that the treaters considered. "It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." *Harris v. Barnhart*, 356 F.3d 926, 931 (8th Cir. 2004). The regulations specifically provide that the opinions of non-treating physicians may be considered. 20 C.F.R. § 404.1527(f).

Having determined that Moll and Mittal's opinions were inconsistent with substantial evidence in the record, the ALJ was clearly authorized to consider the opinions of other physicians. The ALJ gave significant weight to the opinion of Dr. Hoberman, Ph.D., a licensed psychologist. Hoberman considered the medical record,

including Moll's treatment notes, and concluded that Hacker's depression had responded to treatment in the past and was likely to respond positively to continuing medication and psychotherapy. The ALJ also credited the opinion of Dr. Steiner because Steiner was highly qualified and because his opinion was consistent with the overall evidence and with the testimony of state agency medical consultants. Steiner concluded that, at all times since June 30, 2001, Hacker has "retained the ability to do light work, defined as lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking six hours, and sitting two hours in an eight-hour workday." Steiner did, however, recommend that Hacker have ready access to a bathroom wherever she worked.

Hacker does not argue that Hoberman and Steiner's opinions are inconsistent with the record, but instead argues that Hoberman and Steiner lacked access to some of the records that Moll and Mittal reviewed. Specifically, Hacker argues that "the responses to interrogatories provided by Dr. Hoberman and the testimony [of] Dr. Andrew Steiner at Hacker's February 28, 2003 hearing all pre-dated a considerable amount of medical evidence submitted in connection with Hacker's March 17, 2004 hearing." While Hoberman and Steiner may have lacked access to some of Hacker's medical records, we find the ALJ's resolution of the issue to be a permissible one. It is true that the records show that Hacker reported an increase in depression symptoms in late 2003. However, Moll's late 2003 treatment notes indicate the increase in depression symptoms to be relatively minor. Moll saw Hacker four times in late 2003 in response to her depression. By the third visit, Moll found Hacker's functional impairment to be only "moderate," and by the fourth visit, he told her not to come back for a month. At bottom, the ALJ reasonably concluded that Steiner and Hoberman's opinions were consistent with the administrative record. Hacker does not argue that they are not. We will not disturb the ALJ's reasonable judgment.

## B.    Vocational Expert Hypothetical

As presented in her brief, Hacker's argument respecting the hypothetical posed to the VE is entirely derivative of her arguments regarding the ALJ's consideration of the treating physicians' opinions. Specifically, Hacker argues, "[t]he ultimate result of the ALJ's improper discounting of Hacker's treating sources' opinions was an improper hypothetical question [because t]he . . . question . . . did not accurately reflect the limitations imposed by Hacker's impairments." Hacker reasons that the hypothetical question did not include the limitations that both Moll and Mittal felt lessened Hacker's ability to work. As we have previously determined that the ALJ's determinations concerning Hacker's abilities were not outside the zone of choice, we cannot conclude that the hypothetical question was flawed for the reasons alleged by Hacker.

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the Commissioner.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Substantial evidence on the record as a whole does not support the ALJ's decision to deny Joanne M. Hacker disability benefits. To the contrary, it requires that she be granted benefits. First, all treating physicians testified that Hacker could not perform full-time work in our competitive economy. Their testimony was improperly rejected by the ALJ, who instead credited the testimony of nontreating physicians. Second, the ALJ found, both in the first and second decisions, that Hacker was unable to perform her past relevant work as a teacher of the blind and deaf or as a teacher's aide as that work was actually performed by her. Third, the ALJ

-10-

found that there was other work in the national economy, including that of an education assistant II as that work was ordinarily performed, that Hacker could do notwithstanding her disabilities. The record does not support this view. Accordingly, I would remand to the district court with directions to remand to the Commissioner to award benefits.

It is well settled that a treating source's opinion is to be given controlling weight if the opinion is well supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Here, Dr. Simon Mittal of the Mayo Clinic and Dr. Samuel Yue of the Bethesda Pain Center, both treating physicians, stated that Hacker was unable to work. Dr. Mittal treated Hacker from July 17, 2000 through 2003. In October of 2002, Dr. Mittal completed a residual functional capacity questionnaire based on his numerous examinations of Hacker. He reported that Hacker could lift ten pounds occasionally, sit for six hours of an eight-hour day, and stand or walk for two hours of an eight-hour day, but would need to change positions on a frequent basis and would frequently need to take unscheduled breaks, lasting 20 to 30 minutes, during the course of an eight-hour work day. He further stated that Hacker would be limited to low stress jobs, and would frequently experience pain or other symptoms severe enough to interfere with her attention and concentration. Lastly, Dr. Mittal opined that Hacker's impairments would cause good and bad days, and she would be absent from work more than four times per month. (Admin. R. at 488-93.)

On March 10, 2004, Dr. Mittal completed a second residual functional capacity questionnaire. He diagnosed Hacker as having fibromyalgia, colitis, and depression and stated that she was not a malingerer. Dr. Mittal also reported that Hacker could lift ten pounds occasionally and would be able to stand and walk for two hours of an eight-hour day, and sit six hours of an eight-hour day. But Hacker would also need to take frequent, unscheduled breaks of twenty to thirty minutes without warning because of her symptoms. He further opined that Hacker's pain and other symptoms

would frequently interfere with her ability to maintain attention and concentration, and that her impairments would cause her to be absent from work more than four times per month. Dr. Mittal noted that Hacker was incapable of tolerating even low stress jobs. (Admin. R. at 769-74.)

Dr. Yue first saw Hacker at the Bethesda Pain Center on February 4, 2002. He subsequently examined and treated her in April and July. On November 1, 2002, he reported that Hacker suffered from fibromyalgia with symptoms of irritable bowel, sleep disturbance, and cognitive and affective dysfunction. He determined that these ailments made it impossible for her to perform activities of daily work and living. He noted that her impairments are of a cyclic nature, and occasionally she could be expected to perform quite well, but during an exacerbation cycle, she would be completely disabled from any type of physical activity. He concluded that Hacker was disabled from any type of employment at that time. (Admin. R. at 494.)

Hacker was also treated by a psychotherapist, David Moll, from March 2, 2001 through October 2003. He completed a medical assessment on November 18, 2002. He stated that as the result of her impairments, Hacker was limited in her abilities to relate to co-workers; deal with the public; interact with supervisors; understand, remember and carry out detailed job instructions; and understand, remember and carry out simple job instructions. She also possessed only a fair ability to behave in an emotionally stable manner and relate predictably in social situations. Moll determined that Hacker had little or no useful ability to follow work rules; use judgment; deal with work stresses; function independently; maintain attention and concentration; understand, remember and carry out complex job instructions; and demonstrate reliability. He based his opinion on his testing, mental status evaluations, and treatment. He noted that in periods of physical or emotional distress, Hacker would be unable to make occupational adjustments and her attention and concentration would be significantly impaired. (Admin. R. at 508-10.)

Subsequently, in October 2003, Moll reported that any sort of contact with people in an employment situation would cause rather extreme stress that would not allow Hacker to perform even the simplest of tasks. He noted that because Hacker is only able to meet her personal needs in the home setting, he would not expect her to be able to work in any position or capacity. Moll further noted that Hacker scored in the moderate to marked depression range on the Zung Depression Inventory, which was consistent with his behavioral observation and Hacker's self report. (Admin. R. at 720-21.)

The ALJ rejected the testimony of Drs. Mittal and Yue and Mr. Moll basically because he stated that their opinions were not well supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record. Of course, this is the appropriate standard for rejecting the testimony of the treating physicians. The ALJ, however failed to point out *why* the treating physicians' conclusions were not medically acceptable and *how* they were inconsistent with the record. Indeed, the record is replete with reports from other treating physicians at the Mayo Clinic and elsewhere that fully support the conclusions reached by Drs. Mittal and Yue.

Instead of relying on the testimony of the treating physicians, the ALJ relied on the testimony of Dr. Andrew Steiner, who never examined Hacker and whose opinion was based solely on a review of the medical record. Thus, while it can be considered, it should not be given controlling weight in this case where the opinions of the treating doctors are fully supported by the record and are not only consistent with each other, but are also consistent with the numerous other doctors who treated Hacker.

With respect to Dr. Steiner, I certainly do not question his medical qualifications. The facts are, however, that he did not examine the entire record. Moreover, he expressed no opinion as to whether Hacker, in light of all of her disabilities, which include fibromyalgia, colitis, and depression, would be able "to perform the requisite physical acts day in and day out, in the sometimes competitive

and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). He simply reported that she could lift twenty pounds occasionally, ten pounds frequently, stand or walk six hours in an eight-hour day, and sit two hours in an eight-hour day–a basic recitation of the limitations noted by Hacker's treating physicians. He expressed no opinion on the issues that Drs. Mittal and Yue found disabling: whether the combination of her disabilities would cause her to miss at least four days per month, which the vocational expert stated clearly would prohibit her from doing her past relevant work or any other work in the national economy.

The ALJ stated that Dr. Steiner's opinion is consistent with that of Dr. C.T. Bessent. (Admin. R. at 532.) The ALJ writes that Dr. Bessent, who is also a non-treating, non-examining physician, believed "there is no objective evidence of an ongoing disease process." (*Id.*) This is only partially true. In his report, Dr. Bessent concluded as follows:

> [F]ollowing a 1999 [] memorandum concerning fibromyalgia[,] the frequency and intensity of subjective complaints[,] along with the amount of therapy required[,] indicate the presence of a severe impairment. A RFC has been prepared. If any other consultant requests additional development it would be very beneficial to obtain more detailed evidence of the current subjective complaints and functional limitations.

(Admin. R. at 709.)

In considering the mental restrictions of Hacker, the ALJ stated he considered Mr. Moll's report and that of a non-examining physician, Dr. Harry Hoberman. The ALJ reported that Dr. Hoberman stated Hacker's mental state was generally improving, but failed to note whether the improvement was such that Hacker was able to return to work. (Admin. R. at 504-06.) Moreover, Hoberman, who specialized in

-14-

psychiatric disorders, failed to address the physical aspects of Hacker's condition. (*Id.*)

Steven Dean Bosch, a vocational expert called by the Commissioner, testified that if Hacker had to take more than two breaks a day of fifteen minutes, she would be unemployable in the competitive job market. (Admin. R. at 88.) Likewise, if Hacker missed more than two days of work per month, her absenteeism would render her unemployable. (*Id.* at 94.) Unfortunately, that is Hacker's condition. (*Id.* at 488-93.) This evidence is critical to an analysis of whether Hacker can remain in her past relevant work, but it is unaccounted for in the ALJ opinion.

After reviewing the entire record, I must conclude that the ALJ failed to give sufficient weight to the opinions of the physicians who personally examined Hacker. The opinions of the non-examining physicians appear one-sided, lacking the details and conclusions that illustrate Hacker's inability to compete in the job market.

In similar fashion, the ALJ failed to fairly consider the testimony of Hacker. As background, Hacker is married, has a deaf child who still lives at home, is college educated and worked as a teacher's aide. In his findings, the ALJ found Hacker capable of working in a competitive environment, based in part on her daily activities. The record reveals Hacker is able to do some gardening, walking, housework and household chores, dress and bathe herself, prepare the family dinner, drive, and babysit her nieces. (Admin. R. at 533.) We have consistently held that these activities are not a basis for holding that a claimant can do full-time work in our competitive economy. *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996); *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995).

Moreover, the ALJ failed to give appropriate weight to the fact that Hacker suffers from diarrhea, fibromyalgia, and depression, and that she is unable to do anything when she is struck by the symptoms of her illnesses. (Admin. R. at 573-

578.) During episodes of diarrhea, Hacker stated, "I'm just pretty much curled up in a ball as close to the bathroom as I can on the bed close to the bathroom." (*Id.* at 578.) She further explained that these episodes or flare-ups occur every two or three months and last two to three days at a time, and that approximately once a year she has a more debilitating episode which lasts for weeks. (*Id.* at 579.) Hacker further described the pain that she endured. She testified the pain often was exhausting and that it disabled her five days every month. (*Id.* at 582-83.) As a result, Hacker believed she suffered from depression and alienation, and was unable to concentrate or comprehend reading materials. (*Id.* at 584-85.) In my view, the ALJ had no basis for rejecting this testimony as it is fully supported in the record.

For the reasons stated above, I would remand to the district court with instructions to remand to the Commissioner for an award of benefits.

_____