Russell J. BEARDSLEY, Plaintiff,

v.

Michael J. ASTRUE[1], Commissioner of Social Security, Defendant.

No. 4:06–cv–178 RWP–TJS.

United States District Court, S.D. Iowa, Central Division.

Aug. 3, 2007.

---

**1.** Michael J. Astrue became the Commissioner of Social Security on February 1, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Linda McMahon as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Timothy N. Tripp, Tripp, P.C., Pella, IA, Plaintiff.

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## ORDER

PRATT, Chief Judge.

Plaintiff, Russell J. Beardsley, filed a Complaint in this Court on April 15, 2006, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an application for Social Security Disability benefits on September 8, 2003. Tr. at 57–60. Plaintiff claimed to have become disabled November 1, 1999. Tr. at 57. Plaintiff was insured to receive disability benefits until the end of December, 2002. Plaintiff's date of birth is January 4, 1947. Tr. at 57. Between Plaintiff's alleged onset of disability and January 4, 2002, Plaintiff was an individual closely approaching advanced age. Thereafter, Plaintiff was a person of advanced age. 20 C.F.R. § 404.1564. After the application was denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Andrew T. Palestini (ALJ) on March 3, 2005. Tr. at 461–92. The ALJ issued a Notice Of Decision—Unfavorable on August 27, 2005. Tr. at 13–28. On February 27, 2006, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner in this case. Tr. at 3–6. Plaintiff filed his Complaint in this Court on April 15, 2006.

In his decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. The ALJ found that Plaintiff has severe impairments consisting of degenerative disc disease, with sporadic, activity-related exacerbations of back pain; history of multiple surgeries on his shoulders, all well before his alleged disability onset date or after his date last insured; left elbow epicondylitis diagnosed in October 2001, with a couple of subsequent flare-ups prior to his date last insured; obesity (71″ tall with weights ranging from about 270 pounds at his alleged disability onset date to about 250 pounds at his date last insured); and diabetes mellitus, controlled on oral medication(s). The ALJ found that during the relevant period of time Plaintiff had the residual functional capacity to lift and carry no more than twenty pounds and ten pounds frequently with no lifting above shoulder level. The ALJ found Plaintiff could sit, walk and stand 6 to 8 hours per day. He found Plaintiff would occasionally bend, squat, crawl, kneel, stoop and climb stairs. Tr. at 26. The ALJ found that Plaintiff could seldom climb ladders; occasionally use his arms overhead, and push/pull no more than 20 pounds. The ALJ found that Plaintiff was unable to do his past relevant work, but that there were other jobs which Plaintiff would have been able to perform during the relevant period of time. Tr. at 27.

The Court has reviewed all of the medical records in this case, especially those from the relevant period of time. The

Court agrees with the ALJ's recitation of facts, including the sporadic, activity-related, exacerbations of back pain. Almost without exception, whenever Plaintiff complained of back or elbow pain to his doctors, it was after he had engaged in activity such as pulling a transmission from a car or digging in his yard. Because the ALJ adequately discussed the medical history in the body of his decision, a detailed summary of the medical records here would serve no purpose. Instead the Court will proceed to a discussion of the relevant law and decision.

## DISCUSSION

Our role on review is to determine if the Commissioner's findings are supported by substantial evidence on the record as a whole. *Baker v. Barnhart,* 457 F.3d 882 (8th Cir.2006).; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000). Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion. *Lacroix v. Barnhart,* 465 F.3d 881 (8th Cir.2006). In considering the evidence, we must consider both evidence that supports and evidence that detracts from the Commissioner's decision. *Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006). We will disturb the ALJ's decision only if it falls outside the available "zone of choice." *Hacker v. Barnhart,* 459 F.3d 934, 936 (8th Cir.2006). An ALJ's decision is not outside the "zone of choice" simply because we might have reached a different conclusion had we been the initial finder of fact. *Id.* Consequently, we may not reverse the decision to deny benefits unless the record contains insufficient evidence to support the outcome. *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994). *Nicola v. Astrue,* 480 F.3d 885, 886–87 (8th Cir.2007.)

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

The Court finds that there is substantial evidence to support the ALJ's findings at steps 1 through 4 of the sequential evaluation, including the ALJ's finding of residual functional capacity. For a year before his date last insured, Plaintiff was a person of advanced age. The Commissioner's medical vocational guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, rule 202.06, states that a person of advanced age, with a high school education and skilled or semi skilled work background, whose skills do not transfer, is found to be disabled. The vocational expert testified that Plaintiff's knowledge of maintenance and repair tools would transfer to two semiskilled jobs: Order filler and deliverer of rental cars.

In *Bjornholm v. Shalala,* 39 F.3d 888, 890 (8th Cir.1994), the Court quoted 20 C.F.R. § 404.1568(d): "We consider you to have skills that can be used in other jobs when the semiskilled work activities you did in the past work can be used to meet the requirements of . . . semiskilled work activities of other jobs or kinds of work."

In the case at bar, the vocational expert testified that Plaintiff's "knowledge of maintenance and repair tools" would transfer to the light, semi-skilled job with an SVP of 3 to the job of order filler. The vocational expert also pointed to the job of deliverer of car rentals as another job for which Plaintiff's knowledge of maintenance and repair tools would qualify him. The Dictionary of Occupational Titles (DOT), describes the job of Order Filler, 202.487–014, as:

Industry Designation: Retail Trade Industry; Wholesale Trade Industry. Fills customers' mail and telephone orders and marks price of merchandise on order form: Reads order to ascertain

catalog number, size, color, and quantity of merchandise. Obtains merchandise from bins or shelves. Computes price of each group of items. Places merchandise on conveyor leading to wrapping area.

The job of car rental deliverer 919.663–010 is described by the DOT:

Industry Designation: Automotive Services; Retail Trade Industry Alternate Titles: Washer Driver. Delivers rental cars to customers, and services them prior to delivery: Sweeps out and vacuum cleans interior of rental automobile. Washes windows and exterior of automobile, using water and other cleansing compounds and cloth. Regulates tire pressure and adds gasoline and oil. Adds water to battery and radiator. Delivers automobile to customer at specified pickup point. Collects rental payment and deposit from customer; and observes that customer reads and signs rental contract. May deliver new or used automobiles to customer from automobile dealership.

In the opinion of the Court, the vocational expert's testimony that Plaintiff's "knowledge of maintenance and repair tools" qualifies him to do either of the two jobs described above, is questionable at best. In *Evans v. Shalala,* 21 F.3d 832, 834 (8th Cir.1994), the Court admonished ALJs not to be overly broad when characterizing past relevant work. Here, the vocational expert was overly broad when she classified as skills, Plaintiff's knowledge of maintenance and repair tools and then testified that he could, among other things, "ascertain catalog number, size, color, and quantity of merchandise," and "sweep out and vacuum cleans interior of rental automobiles."

Plaintiff's skills are not his knowledge of tools, that is simply an aptitude. His skills are his ability to use the tools in an efficient and effective manner to accomplish mechanical tasks. His ability to know the difference between a screw driver and a jack hammer would be of no use when the task requires the ability to remove a transmission from an automobile. Plaintiff has the skill to remove a transmission, as well as numerous other complicated mechanical tasks. He can't do that anymore because of his impairments.

The question here is not whether he could do the job of an order filler or rental car deliverer. Nearly anyone could learn to do those jobs if given a month or two to learn. The question is whether or not his skills qualify him to do those jobs. If not, the medical vocational guidelines dictate a finding of disability.

This case, therefore, must be remanded for a determination of whether or not Plaintiff's skills transfer to other jobs in the national economy in light of the ALJ's finding that he was limited to light exertional duties. Although the burden at step five has shifted to the Commissioner, the Court would remind the parties that a disability hearing is a non-adversarial proceeding and that the goals of the ALJ and of the advocate are the same, i.e. to insure that qualified claimants are awarded benefits. *Battles v. Shalala,* 36 F.3d 43, 44 (8th Cir.1994). On remand, therefore, counsel should give serious consideration to engaging the services of a qualified vocational expert to perform an in-depth analysis of Plaintiff's skills and abilities in order to advise the ALJ on this most important question.

## CONCLUSION AND DECISION

It is the holding of this Court that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The case is reversed and remanded for further proceedings consistent with this opinion.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b) [2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

2. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."