Kathleen **PEIFFER**, Plaintiff,

v.

Michael J. **ASTRUE**, Commissioner of Social Security, Defendant.

No. 4:08–cv–105 RWP–TJS.

United States District Court, S.D. Iowa, Central Division.

Aug. 19, 2008.

Thomas A. Krause, West Des Moines, IA, for Plaintiff.

Gary L. Hayward, United States Attorney, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Kathleen Peiffer, filed a Complaint in this Court on March 14, 2008, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

After an administrative hearing on December 15, 2005 (Tr. at 542–62), Administrative Law Judge Andrew T. Palestini issued a Notice Of Decision—Unfavorable on July 8, 2006. Tr. at 52–64. On appeal, the Appeals Council remanded the case on December 13, 2006. Tr. at 98–101. Among other reasons, the ALJ was instructed to give further consideration to the opinions of treating and examining physicians, Dr. Brooks and Dr. Wahl. Tr. at 99. A second hearing was held before Administrative Law Judge Thomas M. Donahue on February 21, 2007. Tr. at 563–83. Judge Donahue issued a denial on August 14, 2007. In his letter of September 21, 2007, counsel asked the Appeals Council to consider the fact that Judge Donahue did not give consideration to medical source opinions as instructed by the previous Appeals Council order. Judge Donahue's decision was affirmed on January 25, 2008. After Plaintiff filed her brief in this Court on July 10, 2008 (Clerk's 6), the Commissioner move to remand (Clerk's 7) for the purpose of instructing the ALJ to give proper consideration to the medical source opinions. The motion was denied on August 4, 2008 (Clerk's 11), after which Defendant filed a responsive brief on August 15, 2008 (Clerk's 12).

On October 30, 2003, Plaintiff was seen for a physical examination by Syam P. Kilaru, M.D. Tr. at 335–37. Dr. Syam was told that Plaintiff injured her back while lifting patients in a nursing home in 1998, and that she had undergone surgery for a disc. After the surgery, Plaintiff took Naprosyn "once in a while, but not continuously," and she was not taking any pain medication on a regular basis. Plaintiff reported that she had been diagnosed with Crohn's disease at age 31, but was not taking any medication and denied symptoms such as rectal bleeding or abdominal cramps. Plaintiff's said she saw a doctor

for a lung condition 5 or 6 years prior to the examination, but was not taking the medication which had been prescribed. Tr. at 335. Plaintiff said that she was seeing a psychiatrist, Dr. Brooks, regularly for anxiety and depression. Plaintiff's medications were Zoloft and Clonazepam. Tr. at 336. After his physical examination, which did not show any significant abnormalities in the range of motions, the doctor opined that Plaintiff is able to lift, carry, stand, move about, walk, sit, stoop, climb, kneel, crawl, handle objects, see, hear, speak and travel with no limitations. Tr. at 337.

Plaintiff's treating psychiatrist, James S. Brooks, M.D., submitted a report in support of Plaintiff's claim of disability benefits on February 23, 2004. The doctor wrote that Plaintiff had been his patient since August 27, 2003. See the report of the initial psychiatric evaluation at pages 345–49. Plaintiff's diagnoses included post traumatic stress disorder, panic attacks with agoraphobia, chronic dysthymic disorder with intermittent major depressive episodes, and obsessive compulsive disorder. Plaintiff's main symptoms were intermittent severe depressions, and chronic low mood. Plaintiff's had dissociative episodes when under stress. She had extreme episodes of fear and panic, associated with significant sweating of her hands, rapid heart beat, increased breath rate, and a feeling of impending doom. The doctor wrote that Plaintiff complains of rushing thoughts causes insomnia. During the day, Plaintiff is so overwhelmed by the amount of thoughts that it is hard for her to concentrate. Plaintiff becomes "drained and tired" if she tries to do any kind of work for more than an hour or two. Tr. at 350. The doctor wrote that because of post traumatic stress disorder, Plaintiff suffers from nightmares, hypervigilance, and emotional numbness and dissociative symptoms. Depressive symptoms include anhedonia, appetite and sleep disturbance,

psychomotor retardation and sometimes agitation, decreased energy, feelings of guilt and worthlessness, and difficulty concentrating. Tr. at 353. Doctor Brooks concluded his report:

In summary, Kathy suffers from several psychiatric conditions. These include Major Recurrent Depression, Chronic Dysthymia, PTSD, and Obsessive Compulsive Disorder. Each of these conditions separately contributes to her inability to maintain attention and focus at work, and to be able to cooperate with supervisors or coworkers, but all of her symptoms together have really crippled her at this point in terms of being able to maintain any type of gainful employment.

Tr. at 354. Dr. Brooks' monthly office notes are in the record, covering the period from September 25, 2003 through September 20, 2004. Plaintiff also saw Jan Padget, ARNP, FN–C monthly from October 28, 2004, through December 28, 2004. Tr. at 355–71.

Plaintiff was seen for a psychological evaluation by Timothy Wahl, Ph.D. on October 13, 2004. Tr. at 322–25. Dr. Wahl was provided no medical records for his review. Nevertheless, after his mental status examination and his clinical interview, Dr. Wahl diagnosed, on Axis I, dysthymic disorder (rule out superimposed major depression, panic disorder with agroaphobia, obsessive-compulsive disorder, cannabis abuse by history, and post traumatic stress disorder). On Axis II, histrionic features was diagnosed. Dr. Wahl wrote:

Interpersonally, Kathleen came across as a friendly enough individual, and there was nothing noted in her history that would suggest significant difficulties relating with others. Even so, considering her isolative tendencies, excessive fears, and her hypervigilance, relation-

ships will likely be problematic. She probably will have trouble relating with supervisors, coworkers, and the public, and would work best in a situation where she has little contact with others, or where she can work from home. She has the capacity to use good judgment, and she appears to be a very bright lady. However, considering her fears, compulsive behavior, and poor motivation/apathy, she may have some trouble responding appropriately in the work place. If awarded benefits, Kathleen appears capable of managing her own finances at this time.

Tr. at 325.

On December 17, 2004, Plaintiff underwent a physical examination by someone identified only with the initials CWH. After a physical examination, CWH opined that Plaintiff would be able to tolerate some light duty. Tr. at 375.

On July 21, 2005, Jan Padget, MSN, ARNP, and Josefina Hizon, M.D. (Dr. Brooks had left the clinic. Tr. at 372), wrote to Disability Determination Services. They stated that Dr. Brooks was no longer with their clinic, but that they had been treating Plaintiff since his departure in September of 2004. Ms. Padget and Dr. Hizon wrote: "Ms. Peiffer's symptoms, in combination with her continued physical health problems, make it unlikely that she could maintain gainful employment at this time." Tr. at 435.

On December 5, 2005, Dr. Brooks, wrote that after reviewing his records, including the treatment records of Ms. Padget (Tr. at 428–32 covering monthly visits from June 2, to October 26, 2005), it was his professional opinion that Plaintiff's condition remained the same as when he wrote his February 23, 2004 report. Tr. at 434.

On August 18, 2006, Plaintiff was seen for a physical examination by Jack W. Brindley, M.D. Tr. at 442–49. After his examination, the doctor diagnosed history of laminectomy with buttocks pain that radiates into her groin, depression, obsessive compulsive disorder, and anxiety attacks. The doctor opined that Plaintiff retained the capacity for activities of daily living, and that she was kept from working because of her mental status. Tr. at 445.

On February 13, 2007, Dr. Brooks, who had resumed his care of Plaintiff (Tr. at 486 et seq.) completed a Medical Source Assessment (Mental). The doctor was asked to rate Plaintiff's abilities in several areas in terms of little or no difficulty, occasional difficulty, occasionally unable, and frequently unable. 17 of the 23 were rated frequently unable. 6 were rated occasionally unable.

At the hearing of December 15, 2005, Judge Palestini heard testimony from Plaintiff, but a vocational expert was not present and did not testify. Tr. at 542–62. In his decision of July 8, 2008 (Tr. at 52–64), Judge Palastini stopped the sequential evaluation at the fourth step. Tr. at 63. He found that Plaintiff's retains the residual functional capacity to perform a range of light level simple routine repetitive tasks which allows her to do her past relevant work. Tr. at 61.

On December 13, 2006, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded for further proceedings. Tr. at 96–101. The Appeals Council noted that the ALJ had found Dr. Brooks' and Nurse Padget's opinions not supported by the preponderance of the medical evidence of record:

> However, the Appeals Council notes that although these sources both find the claimant unable to engage in substantial gainful activities, their opinions are unclear regarding specific functional limitations. clarification, which may include recontact with psychological sources, is necessary to further evaluate the claim-

ant's maximum residual functional capacity.

Tr. at 99.

On remand, Plaintiff's case was heard by Administrative Law Judge Thomas M. Donahue on February 21, 2007. After hearing testimony from Plaintiff and her friend, the ALJ asked a vocational expert the following hypothetical question:

> First one being age 54, female, she has high school education, two years of college, past relevant work as set forth in Exhibit 25E (Tr. at 306). Taken from Exhibit 27F (Tr. at 458), can lift 50 pounds occasionally, 25 pounds frequently, sitting and standing up to two hours at a time for six hours out of an eight hour day, walking up to two blocks, shouldn't be climbing ladders, ropes and scaffolds more than occasionally. Claimant could do work that is noncomplex, but is more than simple routine. Based on this hypothetical could the claimant do any of her past relevant work?

Tr. at 580. In response, the vocational expert testified that Plaintiff could do her past relevant work, and that other jobs existed which could be done within the framework of the hypothetical. Tr. at 581. The ALJ's second hypothetical assumed that Plaintiff would miss three or more days of work each month. The vocational expert said no work would be possible. Tr. at 582. When counsel asked the vocational expert to consider the opinions rendered by Dr. Brooks and Nurse Padget, the vocational expert testified that no work would be possible. Tr. at 582–83. In his decision of August 14, 2007 (Tr. at 17–32), Judge Donahue found that Plaintiff has the residual functional capacity reflected in his first hypothetical. He found that Plaintiff has the ability to do her past relevant work, but he went on and completed the sequential evaluation finding that other work exists which Plaintiff can perform.

## DISCUSSION

■■■ Our role on review is to determine if the Commissioner's findings are supported by substantial evidence on the record as a whole. *Baker v. Barnhart,* 457 F.3d 882 (8th Cir.2006.); *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000). Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion. *Lacroix v. Barnhart,* 465 F.3d 881 (8th Cir.2006). In considering the evidence, we must consider both evidence that supports and evidence that detracts from the Commissioner's decision. *Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir.2006). We will disturb the ALJ's decision only if it falls outside the available "zone of choice." *Hacker v. Barnhart,* 459 F.3d 934, 936 (8th Cir.2006). An ALJ's decision is not outside the "zone of choice" simply because we might have reached a different conclusion had we been the initial finder of fact. *Id.* Consequently, we may not reverse the decision to deny benefits unless the record contains insufficient evidence to support the outcome. *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994). *Nicola v. Astrue,* 480 F.3d 885, 886–87 (8th Cir.2007.)

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

■ The parties agree that the administrative decision is not supported by substantial evidence on the record as a whole. The bone of contention is the appropriate

remedy. Plaintiff urges an award of benefits, while the Commissioner urges a remand for further consideration of the opinions of Dr. Brooks and Dr. Wahl.

42 U.S.C. § 405g provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

In *Gavin v. Heckler*, 811 F.2d 1195 (8th Cir.1987), the ALJ found that Gavin was able to return to past relevant work. Chief Judge Donald P. Lay, writing for the Court, held that decision was not supported by substantial evidence on the record as a whole. Regarding the issue of the appropriate remedy, he wrote, at 1201:

> Ordinarily, where the Secretary has incorrectly allocated the burden of proof based upon an erroneous finding that the claimant can return to his prior work, we will remand for further proceedings. However, where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.

Likewise, in *Baugus v. Secretary of Health and Human Services*, 717 F.2d 443, 448 (8th Cir.1983), the Court wrote that where substantial evidence on the record as a whole supported a finding of disability, there was no need to remand. The district court was ordered to enter judgment granting an award of benefits.

In the case at bar, no one argues that Dr. Brooks' opinion is not substantial evidence in support of Plaintiff's claim of disability. There is no evidence in this record which contradicts Dr. Brooks opinion, and the Court agrees with Plaintiff that the treatment notes support the opinion. When Dr. Wahl saw Plaintiff, he was given no medical records to review. Nevertheless, he opined that Plaintiff's mental illnesses would make it difficult to work unless she could do something from home. Dr. Wahl's opinion does not, in anyway, contradict or detract from Dr. Brooks' consistent opinion.

Dr. Brooks opinion was available for two administrative law judges to consider. After the first hearing, the Appeals Council remanded the case for consideration of Dr. Brooks' opinion. At the hearing before Judge Donahue, counsel asked a hypothetical question based on the doctor's report. The vocational expert's testimony was that when the opinion was considered, no work would be possible. Nevertheless, Judge Donahue discounted Dr. Brooks' opinion and relied on the testimony of the vocational expert in response to a defective hypothetical, one that assumed minimal mental limitations, in order to deny the claim.

In *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984), speaking to the issue of remedy, Judge Bowman, writing for the Court, wrote:

> As we find Parsons to be disabled on the basis of the record, we must now turn to the question of remedy. If the record as presented to the ALJ contains substantial evidence supporting a finding that the claimant was disabled, then a reviewing court may reverse and remand the case to the District Court for entry of an order granting benefits to the claimant. *See, e.g., Baugus v. Secretary of Health and Human Services,* 717 F.2d 443, 448 (8th Cir.1983); *Nelson v. Heckler,* 712 F.2d 346, 349 (8th Cir. 1983); *Tennant,* 682 F.2d at 710–11; *Zimiga v. Schweiker,* 651 F.2d 611, 613 (8th Cir.1981). In this case, Parsons has been consistently diagnosed at least since September 19, 1980 as having severe social and adjustment problems. If we remanded this case to the Secretary

for vocational expert testimony regarding jobs which Parsons might have been capable of performing during the period between September 19, 1980 and July 1, 1981, such testimony would not erase or change the clinically observed and functionally corroborated fact that Parsons was mentally incapable of holding any job during that period. Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate. *Tennant,* 682 F.2d at 710.

Plaintiff argues that the Court should award benefits because, among many other reasons, the case has already been heard by two ALJs. The Commissioner argues that the length of time necessary to have a fully developed record is not a factor to be considered when deciding the remedy. While the length of time is not the only reason to award benefits, it is a factor to be considered. In *Bradley v. Bowen,* 800 F.2d 760, 764 (8th Cir.1986), Judge Heaney wrote that the Court was convinced that Bradley was unable to do his past relevant work and that ordinarily the Secretary should be given the opportunity to prove that there are other jobs that could be performed. "However, there has already been one remand and we are not confident that a second remand will produce a correct decision." Furthermore, in the past ALJs have shown a reluctance to follow the instructions of a remanding court, even when the remand was on the motion of the Commissioner. *See, e.g., Silk v. Astrue,* 509 F.Supp 2d 779, 780 (S.D.Iowa 2007). Be that as it may, in this case, the record contains overwhelming substantial medical and vocational evidence that Plaintiff is disabled. Although both ALJs stopped the sequential evaluation at the fourth step, the record made at the second hearing shows that when Plain-

tiff's psychiatric condition, as described by Dr. Brooks, is considered, no work is possible. That opinion is bolstered by the opinion of Dr. Wahl, and of Nurse Padget. There is no contrary evidence in the record. For all of those reasons, therefore, this Court will exercise its power to reverse the final decision of the Commissioner without remanding for an additional hearing.

## CONCLUSION AND DECISION

It is the holding of this Court that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The case is reversed and remanded for payment of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[1]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

**1.** N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the gov-

ernment in the case that the applicant alleges were not substantially justified."