**Melody A. LONG, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. 4:07–cv–111 RWP–TJS.**

United States District Court, S.D. Iowa, Central Division.

May 20, 2008.

---

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, for Defendant.

Dennis W. Emanuel, Webber Gaumer Emanuel PC, Ottumwa, IA, Thomas A. Krause, West Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief District Judge.

Plaintiff, Melody A. Long, filed a Complaint in this Court on March 20, 2007, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed applications for benefits on July 21, 2003. Tr. at 66–68. After the application had been denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held on October 5, 2005, before Judge John P. Johnson (ALJ). Tr. at 311–69. The ALJ issued a Notice of Decision—Unfavorable on January 12, 2006. Tr. at 12–26. The Appeals Council declined to review the ALJ's decision on January 20, 2007. Tr. at 6–9.

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity at any time after her application for benefits. At the second step, the ALJ found Plaintiff has the following severe impairments: osteopenia, a history of vertebral compression fracture, lactose and a history of fructose intolerance, retinal vasculitis with a history of vitreous hemorrhage of the left eye, left ovarian cyst, allegations of medically determinable impairment resulting in complaints of chronic low back pain and arthralgias, a history of pancreatitis, and a history of a learning disorder. Tr. at 20.

The ALJ found that none of these impairments, alone or in combination, meet or equal one listed in 20 C.F.R. Appendix 1, Subpart P. Tr. at 17. At Step four, the ALJ found that Plaintiff has the residual functional capacity:

to perform a range of light work, or work requiring lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting 5 hours in an 8–hour workday, and standing and/or walking at least 2 hours of an 8–hour workday. The claimant could not perform work requiring more than occasional bending, stooping, squatting, kneeling, crawling or climbing. In addition, the claimant could not perform work requiring work at unprotected heights.

Tr. at 23. The ALJ found that Plaintiff is unable to perform her past relevant work. Tr. at 24. At the fifth and final step of the sequential evaluation, the ALJ found that Plaintiff is able to do sedentary and light unskilled jobs examples of which were identified by a vocational expert at the hearing. Tr. at 25. The ALJ held that Plaintiff is not disabled and not entitled to the benefits for which she applied. Tr. at 25.

The Court has read all of the medical reports in this record.

Plaintiff's long time treating physician, Donald Richard Wirtanen, D.O., gave a tape recorded statement to counsel on August 3, 2004. The statement was later transcribed and submitted to the ALJ. Tr. at 254–62. The doctor stated:

The main problems that she has is a chronic pain type syndrome which started mainly after she developed a T 12 compression fracture that apparently happened at work in the summer of 2003. She has been followed by a rheumatologist for a chronic pain syndrome. She has seen a endocrinologist for similar complaints. All with the thought that there may be some type of rheuma-

tologic systemic problem that could be behind all of this.

The doctor went on to state that Plaintiff fits some of the symptomatology of a systemic disease called Werner's Syndrome. Tr. at 255. The doctor stated that Werner's Syndrome is a genetic condition which causes premature aging, and that it is a progressively debilitating condition. Plaintiff's osteoporosis is a symptom of the Syndrome. The doctor stated that he performed an examination to evaluate Plaintiff's functional capacity. Tr. at 256. Dr. Wirtanen said his conclusions were based on his observations of Plaintiff performing various tasks, and from his clinical interview:

It appeared with regard to lifting and carrying that she could only carry about 5 pounds on occasion. She could stand without interruption for about fifteen minutes at a time for a total of about one hour in an eight hour time frame. She could only sit without interruption for about ten to fifteen minutes at a time and then a total of about an hour over an eight hour period. She would need to lay down a total of about one to two hours during an eight hour period, mainly due to her pain in her back. She would be unable to climb, stoop, crouch, kneel or crawl at any time and would only be able to do any type of balancing or overhead type of work on occasion. She had no deficit in handling, feeling, seeing, hearing, or speaking, but cannot push, pull, or bend forward or backward from the waist.

Tr. at 257. Dr. Wirtanen testified that his opinion was based on his objective observation of Plaintiff performing the functions. He stated that it was not based on a "question format." He said that based on his findings, he did not believe Plaintiff could work on a sustained basis. Tr. at 258.

At the hearing, Plaintiff, whose date of birth is December 10, 1968, testified that she was 36 years old. Tr. at 316. Plaintiff testified that Dr. Wirtanen had been her doctor for 19 or 20 years. Tr. at 320. Plaintiff testified that she was four feet, ten inches tall, and that she weighed 120 pounds. She testified that during the day she must lay down two or three times for about an hour because of her pain. Tr. at 328.

At the conclusion of Plaintiff's evidence, which included testimony from her mother and her companion, the ALJ called Paul From, M.D. to testify as a medical expert. Tr. at 348. Dr. From was asked to give his opinion regarding the appropriate diagnoses.

... There's obviously some ophthalmological problems. There has been osteoporosis with compression fractures of two vertebrae. There have been normachromic, normacidic [phonetic] anemia. There [has] been one pregnancy, was delivered by Cesarean section. There have been problems with food intolerance, especially in some of the carbohydrate foods. She's had some diarrhea at times. There has been a great deal of pain throughout all the exhibits I reviewed. Finally after consultations at the University of Iowa Hospitals and by rheumatologist, Dr. Fynan, it was concluded by him that she had fibromyalgia, as the answer for her pain problems. The pain seems to be extremely widespread throughout her body, including headaches and on down the body. This morning there was some description of pain radiating down the right lower extremity from her back. The only objective evidence we have for any cause of pain would be compression fractures in part of T12 and T11 vertebrae. The allegations of pain would appear to be markedly beyond the objective evidence that we could find. The pain appears to her to be disabling. And she does take

a number of neuropathic pain medications in the form of Neurontin, or Gabapentin, Ultram, or Trazodone. She's had medications for asthma so-called. She does take other minor pain medication. She has been on Amitriptylene which is a tricyclic anti-depressant which seems to help cope with pain at times. The pain is very widespread throughout her body. Seems always to be musculo-skeletal pain. Seems to be disabling to her. On the objective basis of previous physical examinations and consultations with doctors, the diagnosis has been that of pain syndrome. The rheumatologist comes up with the catch-all of fibromyalgia, and has treated that as such. The allegations's in there, but the pain seems to be disabling her.

Tr. at 349–50. When he was asked about limitations, the doctor recited that there had been three opinions rendered: 1) lift 20 pounds occasionally, 10 pounds frequently, stand and walk for about two hours, sit for six hours; push and pull without difficulty; 2) stand and walk six hours in an eight-hour day, sit for six hours; and, 3) Dr. Wirtanen's opinion that Plaintiff is "absolutely incapacitated by all of her problems. The ALJ asked Dr. From to what extent Plaintiff's lifting is limited. The doctor did not answer directly. Rather, he responded: "Well, it does appear to me that from what I read, and observing her this morning, and listening to her testimony, that she has a great deal of impairment." Tr. at 352. In response to a question from counsel regarding osteoporosis and whether it is characterized by a lot of pain, Dr. From testified:

No, that's not a part of it—there actually—if one has—you start out with osteopenia in which there's a decrease in the amount of calcium in the skeletal system. Then you go on to osteoporosis which becomes apparent when there's something happen to bone. Then there

is pain associated with fractures, of course. The common place for fractures would be in the vertebral column. Once the process has gone through to healing, at least partial for the fracture, the pain would markedly subside. People will say that they always have trouble. The amount of pain and the description of pain given by patients is in the eyes of their beholding. The pain should not be beyond where the fracture was. Unless if you get back in the other area, then it's osteopenia, and that would have no pain with it. So the pain is not really associated with the osteoporosis so much, but with the complication of it. The widespread use—as she says, her shoulders hurt. I don't know why. That's an uncommon place where osteoporosis would manifest itself. Maybe it's a rotator cuff problem, maybe it's bursitis, or some impingement syndrome in the shoulders. I don't know. There is a suggestion in her pain radiating down her right leg that may be radicular, but according to the records the only things found by MRI and so forth were T 11 and T 12 vertebrae which would not cause pain to go down the leg. Actually, it would come from the lumbosacral area. So the widespread amount of pain here has to be, I guess with what everybody else has concluded, and it's a pain syndrome. We don't understand why some people have pain, why some people are disabled by pain and other people with the same pain would ignore the whole thing. It's very difficult to understand yet.

Tr. at 354–55. Counsel asked the doctor if Plaintiff was exaggerating her pain. The Doctor testified: "No, I don't think so. I thought her testimony was very credible." Tr. at 355.

The ALJ called Elizabeth Albrecht to testify as a vocational expert. Tr. at 357. The ALJ asked the expert to consider a woman of Plaintiff's age, education, and work experience, who has the previously discussed impairments. In the first hypothetical, the individual could lift 20 pounds occasionally and 10 pounds routinely. She could stand or walk for at least two hours and sit six hours. There would be only occasional bending, stooping, squatting, kneeling, crawling, or climbing. The individual would not work at unprotected heights. Tr. at 361–62. The expert testified that such an individual would be able to do sedentary jobs such as final assembler, addresser, and touch-up screener. Tr. at 362–63.

The ALJ's second hypothetical was:

She could lift five to ten pounds. Standing of one half to one hour at a time, and walking of one block at a time. With walking or standing of four hours out of an eight-hour day, sitting of a half hour at a time, and sitting of three to five hours out of an eight-hour day. With only occasional climbing, only occasional work with the arms overhead. She is able to do only simple, routine, repetitive work that does not require occasional supervision.

Tr. at 363. The vocational expert testified that an individual so limited would not be able to engage in competitive employment. Tr. at 363–64. On further questioning, the vocational expert testified that if the individual could alternate sitting and standing, then some of the previously mentioned jobs could still be done. Tr. at 364. She testified that the need to lie down through the day would preclude employment. Tr. at 365. Finally, when counsel read the restrictions placed on Plaintiff by Dr. Wirtanen, the vocational expert testified that no work is possible. Tr. at 367.

In his decision, the ALJ wrote: "Dr. Wirtanen's opinions are not supported by clinical findings or laboratory sutdies, nor are they consistent with the record as a whole. Therefore, little weight is given to

his opinions." Tr. at 24. The ALJ also pointed to Plaintiff's description of her daily activities as a reason for discrediting her testimony regarding her pain. "... she reported caring for her personal needs, performing household chores with help (laundry, dishes, changing the sheets, ironing, vacuuming/sweeping, and taking out the trash), cooking, shopping, paying bills, driving, caring for her (11 year old, Tr. at 316) daughter, listening to the radio, and reading the newspaper." While the ALJ acknowledged that such activities of daily living do not translate into the ability to work, they "suggest that the claimant does not experience pain and medication side effects ..." *Id.*

For reversal, counsel argues that the ALJ erred in his consideration of the medical opinions of the treating and examining doctors; that the ALJ erred in the *Polaski* analysis; and, that the ALJ erred by failing to fully and fairly develop the record regarding Plaintiff's visual impairment.

## DISCUSSION

Our role on review is to determine if the Commissioner's findings are supported by substantial evidence on the record as a whole. *Baker v. Barnhart,* 457 F.3d 882, 892 (8th Cir.2006); *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000). Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion. *Lacroix v. Barnhart,* 465 F.3d 881, 885 (8th Cir. 2006). In considering the evidence, we must consider both evidence that supports and evidence that detracts from the Commissioner's decision. *Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006). We will disturb the ALJ's decision only if it falls outside the available "zone of choice." *Hacker v. Barnhart,* 459 F.3d 934, 936 (8th Cir.2006). An ALJ's decision is not outside the "zone of choice" simply because we might have reached a different conclusion had we

been the initial finder of fact. *Id.* Consequently, we may not reverse the decision to deny benefits unless the record contains insufficient evidence to support the outcome. *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994).

*Nicola v. Astrue,* 480 F.3d 885, 886–87 (8th Cir.2007.)

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

The essence of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984) is that complaints of pain cannot be disregarded simply because those complaints are not supported by objective medical evidence. For example, in *Beeler v. Bowen,* 833 F.2d 124, 126–27 (8th Cir.1987), then Chief Judge Donald P. Lay, writing for the Court, wrote that in *Polaski:*

> We held that the ALJ must consider, in addition to objective medical evidence, any evidence relating to claimant's prior work record, and observations by treating and examining physicians relating to such matters as daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. Although in the instant case the ALJ stated that he considered the claimant's subjective complaints pursuant to these factors, it appears that the only factor to which the ALJ gave any weight was the absence of any objective medical basis which supports the degree of severity of Ms. Beeler's subjective complaints. Such strict reliance on objective medical evidence is, as we have repeatedly held contrary to the law of this circuit. *See, e.g. Marshall v. Heckler,* 731 F.2d 555 (8th Cir.

1984). An ALJ may not reject subjective complaints solely because of lack of objective medical evidence. *Benson v. Heckler,* 780 F.2d 16, 17 (8th Cir.1985).

The Court went on to write: "We have also held that subjective complaints may be discounted if "there are inconsistencies in the evidence as a whole." " *Id.* at 127. This law is as binding today as it was when ALJ Johnson decided Arlene Beeler's case. *See Ford v. Astrue,* 518 F.3d 979, 982 (8th Cir.2008) (Under *Polaski* an ALJ cannot simply reject complaints of pain because they were not supported by objective medical evidence.)

■ In the case at bar, it is obvious that the only factor to which the ALJ gave consideration was the lack of objective evidence to support Plaintiff's complaints of disabling pain. This was in spite of the overwhelming substantial evidence from all of the physicians and lay testimony, that Plaintiff is disabled by unrelenting pain.

When the vocational expert was asked to consider Plaintiff's true limitations, as set out by her treating physician and confirmed by the medical expert, it was her testimony that no work was possible. In *Beeler v. Bowen,* 833 F.2d at 127–28, the Court wrote:

> In cases such as this, however, where the total record overwhelmingly supports a finding of disability and the claimant has demonstrated her disability by evidence on the record as a whole, we find no need to remand.... Because we find that the claimant's allegations of disabling pain were credible, and that substantial evidence on the record as a whole supports Ms. Beeler's claims of disability within the meaning of the Social Security Act, a remand is un necessary. *Talbott v. Bowen,* 821 F.2d 511,

515 (8th Cir.1987). "Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir.1984).

■ This case, therefore, is reversed and the Commissioner is ordered to award Plaintiff the benefits to which she is entitled.

## CONCLUSION AND DECISION

It is the holding of this Court that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The case is reversed and remanded for payment of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[1]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

[1]. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."