**Eileen M. MITCHELL, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 4:04–CV–90249.**

United States District Court,
S.D. Iowa,
Central Division.

July 15, 2005.

Kenneth A. Johnsen, Kenneth A. Johnsen, Attorney at Law, Des Moines, IA, for Eileen M Mitchell, Plaintiff.

Gary L. Hayward, United States Attorney, Des Moines, IA, for Commissioner of Social Security, Defendant.

## ORDER

PRATT, District Judge.

Before the Court is Kenneth Johnsen's application for attorney fees. By way of background, Plaintiff filed a Complaint on May 4, 2004, seeking Judicial Review of Defendant's denial of her application for disability benefits under the Social Security Act. *See* 42 U.S.C. § 401 et seq. An order setting a briefing schedule was issued by the Court. Plaintiff received an extension of time to file her brief in support of reversing the Commissioner's decision until August 16, 2004. The Commissioner also received an extension to file her brief requesting affirmance of the Commissioner's denial until October 4, 2004. Plaintiff filed her reply brief on October 14, 2004 and the matter was submitted to the Court on the briefs of the parties and without oral argument.

On February 25, 2005, the Court reversed the Defendant's administrative decision and ordered Defendant to pay Plaintiff "the benefits to which she is entitled." Plaintiff's lawyer filed an application for an award of attorney fees under 42 U.S.C. § 406(b)(1) on March 11, 2005. In his initial application for § 406 attorney fees, Plaintiff's counsel announced that he would file an attorney fee application under the Equal Access to Justice Act ("EAJA") "after the court's decision becomes final." *See* Pl.'s Application of March 11, 2005 at paragraph 6; 28 U.S.C. § 2412 et seq. On May 12, 2005, Plaintiff's lawyer filed a Motion For Award of Attorney Fees Pursuant to the EAJA.[1] The parties reached agreement with respect to the EAJA fees and as a result the Court awarded Plaintiff $3,390.66 in attorney fees. In the Court's order of May 31, 2005, approving these fees the Court also provided: "Defendant is hereby ordered to provide to the court within 30 days of this order the past-due benefits payable to Plaintiff and also the amount Defendant has withheld pursuant to the statute." As a result of this order, Defendant responded indicating that the Commissioner's Notice of Award was dated May 22, 2005, and the past due award to Plaintiff was $40,696.50 and the amount

---

1. Contrary to the Iowa Local Rule 54.2(b), Plaintiff's lawyer did not "specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified." *See* Local Rule 54.2(b).

withheld for potential attorney fees was $12,593.50.

On June 7, 2005, Plaintiff's lawyer filed a Supplemental Motion for an Award of Attorney Fees under 42 U.S.C. § 406(b) which is currently before the Court. Accompanying the motion was an affidavit from Plaintiff's lawyer showing an expenditure of twenty-two and one half hours of attorney time. Plaintiff's lawyer argued in his brief in support of attorney fees that he is entitled to the entire amount withheld as an attorney fee or $12,593.50. As support for this fee the lawyer for Plaintiff cites to the statute itself, the Supreme Court decision in *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002), and the fee agreement between himself and Plaintiff. Defendant resists and argues that $12,593.50 is not a reasonable fee for the work performed by Plaintiff's lawyer in the district court. Interestingly enough, Defendant also cites to the *Gisbrecht* decision as support for her position along with numerous other court of appeals and district court decisions interpreting what are "reasonable" attorney fees under § 406. In response to Defendant's Resistance, Plaintiff filed a "Clarification of Attorney's Affidavit in Support of Attorney Fees," on July 13, 2005 reducing his request for attorney fees to $7,293.50. This request was a $5,300 reduction in the initial request for the $12,593.50 figure [2]. Oral argument on the issue was held on July 14, 2005. Each party presented argument regarding the reasonableness of the fees. The matter is fully submitted.

## ANALYSIS

Congress has provided in § 406:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, *the court may*

determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

*See* 42 U.S.C. § 406(b)(1) (emphasis added).

In 2002, the Supreme Court's decision in *Gisbrecht* addressed the meaning of the term "reasonable fee." 535 U.S. at 795, 122 S.Ct. 1817. After reciting areas of the practice of law where contingent fees have traditionally been available, Justice Ginsburg's majority opinion noted that prior to 1965, when there were no limits with respect to attorney fees charged to Social Security claimants, there were instances where lawyers charged exorbitant contingent attorney fees up to one third or one half of benefits to which recipients were entitled. The Congress also, however, recognized the need for contingent fees in disability cases and that oftentimes attorneys representing Social Security claimants were not being paid, even after successful results for their client. *Id.* at 804 n. 13, 122 S.Ct. 1817. As a result of these competing concerns Congress enacted § 406 to attempt to remedy this problem. The Supreme Court explained:

Attending to these realities, Congress provided for a reasonable fee, not in

---

**2.** $5,300.00 represents the amount of attorney fees that Counsel says will be approved by the

Social Security Administration by virtue of Johnsen's contract with his client.

excess of 25 percent of accrued benefits, as part of the court's judgment, and further specified that no other fee would be payable. Violation of the reasonable fee or 25 percent of accrued benefits limitation was made subject to the same penalties as those applicable for charging a fee larger than the amount approved by the Commissioner for services at the administrative level—a fine of up to $500, one year's imprisonment, or both. To assure the payment of the fee allowed by the court, Congress authorized the agency to certify the amount of the fee to the attorney out of the amount of the accrued benefits.

Congress thus sought to protect claimants against inordinately large fees and also to ensure that attorneys representing successful claimants would not risk nonpayment of [appropriate] fees. But nothing in the text or history of § 406(b) reveals a design to prohibit or discourage attorneys and claimants from entering into contingent fee agreements. Given the prevalence of contingent-fee agreements between attorneys and Social Security claimants, it is unlikely that Congress, simply by prescribing reasonable fees, meant to outlaw, rather than to contain, such agreements.

*Id.* at 804–05, 122 S.Ct. 1817 (internal quotations and citations omitted). The Court went on to note that in 1990 Congress amended 42 U.S.C. § 406(a) to authorize contingent-fee agreements in agency-level representations. After analyzing this history the Court held:

> [W]e conclude, § 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) *calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases.* Congress has provided one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits. § 406(b)(1)(A) (1994 ed., Supp. V). Within the 25 percent boundary, as petitioners in this case acknowledge, the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered.

*Id.* at 807, 122 S.Ct. 1817 (emphasis added).

In determining reasonableness and in performing its role as an "independent check" to assure a reasonable result, the district court must look at all the facts regarding the case before it and analyze the lawyers performance in light of all the evidence and circumstances in each individual case. By way of example, Justice Ginsburg suggested the following:

> Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved. *See, e.g., McGuire,* 873 F.2d, at 983 ("Although the contingency agreement should be given significant weight in fixing a fee, a district judge must independently assess the reasonableness of *its* terms."); *Lewis v. Secretary of Health and Human Services,* 707 F.2d 246, 249–250 (6th Cir.1983) (instructing reduced fee when representation is substandard). If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. *See Rodriquez,* 865 F.2d, at 746–747. If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order. *See id.,* at 747 (reviewing

court should disallow "windfalls for lawyers"); *Wells,* 907 F.2d, at 372 (same). In this regard, the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases. *See Rodriquez,* 865 F.2d, at 741. Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review.

*Gisbrecht,* 535 U.S. at 807, 122 S.Ct. 1817.

■ It is now clear that in Social Security cases contingency fee agreements are both allowable and enforceable under § 406. *See id.* at 793, 122 S.Ct. 1817 (recognizing the primacy of lawful attorney-client fee agreements). A contingency fee in excess of 25% is, however, *per se* unreasonable. If a district court has before it a contingent fee agreement of 25% or less, it may approve the award, but only after it does an "independent check" of reasonableness. However, "reasonableness" is not to be determined by using the "lodestar approach."

Prior to *Gisbrecht* it was the practice of the majority of federal courts, both district and appellate to determine a "reasonable fee" under 42 U.S.C. 406(b) by employing what is known as the "lodestar" approach in which the court determined a lawyer's hourly rate and multiplied that rate by the number of hours reasonably expended in representing the Plaintiff. In the Eighth Circuit, this approach was best exemplified by *Cotter v. Bowen,* 879 F.2d 359 (8th Cir.1989). Courts tempered use of the lodestar method by factors that included looking at whether Plaintiff's counsel had unreasonably delayed the determination of Plaintiff's entitlement as well as discussing whether Plaintiff's counsel would receive a "windfall" for receiving a large fee based upon minimal effort. The Ninth Circuit had essentially the same practice within their courts and *Gisbrecht* was decided by that Circuit based upon the traditional lodestar method of determining what a "reasonable fee" was. The Ninth Circuit also discussed the fact that the lodestar figure could be adjusted based upon what has come to be known as "Johnson factors." *See Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717–719 (5th Cir.1974).

The Supreme Court reversed the Ninth Circuit's approach after tracing the history of the lodestar methodology and discussing at length the amendments to the Social Security Act from 1965. The Supreme Court also noted that fee-setting in the Social Security context regarding a Plaintiff's past-due benefits do not shift fees to the losing party but rather authorizes fees from the successful party. The Supreme Court determined that it was unlikely in 1965 that the Congress intended to install a lodestar method that was not developed by the courts until some years later. " § 406(b) does not displace contingent-fee agreements .... Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht,* 535 U.S. at 806, 122 S.Ct. 1817.

The plaintiff's attorney, with its request for attorney fees, is required to provide the court with the information upon which the court can determine reasonableness. *Id.* at 807 n. 17, 122 S.Ct. 1817. The Supreme Court offered examples as to factors that should be taken into account by courts when measuring the contingent fee amount produced as withheld benefits ver-

sus reasonableness.. These include the "character of the representation" and, as an example, *Gisbrecht* cites to a case involving substandard representation. Another factor is whether the attorney's own delay played some part in producing he amount of withheld benefits available for fee setting purposes. In this regard, Justice Ginsburg also noted: "If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order." *Id.* at 808, 122 S.Ct. 1817 (citing *Rodriquez*, 865 F.2d at 747). The court has the duty to conduct a "reasonableness review" in this case given the facts as shown by the record that appears before the district court.

In the opinion of the Court, this case turns on a proper understanding of the word "windfall," as the Commissioner's main argument is that Johnsen's request would amount to a windfall and is "excessive." Although the word "windfall" appears in several cases, not the least of which is *Gisbrecht,* the Court cannot find a definition of the word in any of the cases. Blacks Law Dictionary defines the word as: "an unanticipated benefit, usually in the form of a profit not caused by the recipient." In this context, the Oxford English Dictionary defines "windfall" as a casual or unexpected acquisition or advantage, such as from an unexpected inheritance or by the negligence of others. The Oxford English Dictionary also defines windfall profit as an unexpectedly large or unforeseen profit, and by way of example mentions a change in value of equipment due to unforeseen changes in market value. Absent clarification by a higher court, this Court will use the word "windfall" in this context. In this context, the Court assumes that a "windfall" situation may occur if, for example, the day after the contingency-fee was signed the plaintiff received benefits, without any effort extended by the claimant's attorney. In such a case it would be "unexpected" that the claimant's attorney would enjoy the spoils of another person's labor.

The Court is also mindful of the Eighth Circuit's reasoning in *Burnett v. Heckler,* 756 F.2d 621 (8th Cir.1985), regarding the computation of attorney fees:

Moreover, the statutory language and legislative history suggest that Congress sought to "encourage effective legal representation of claimants by insuring lawyers that they will receive reasonable fees directly through certification by the Secretary." *Dawson v. Finch,* 425 F.2d at 1196; *see also* Hearings on H.R. 6675 Before the Senate Committee on Finance, 89th Cong., 1st Sess. 512–13 (1965) (attorney complaints that claimants sometimes receive awards without the attorney's knowledge and do not notify the attorney and do not pay the attorney's fee). Section 406(a) and (b) reflect a compromise—the Secretary must withhold and pay a reasonable attorney's fee directly to the attorney out of the claimant's past-due benefits, thus guaranteeing payment to the attorney and avoiding collection problems, but the amount of the attorney's fee that must be withheld and directly paid to the attorney is limited to a maximum of 25% of the past-due benefits.

*Burnett* at 626. In order to "encourage effective legal representations of claimants" it is important that the Court carefully examine the factual situation and not be quick to identify a fee agreement as a "windfall" situation. It is important that Judges and others understand the concept of the importance of attorney fees in the practical delivery of important legal services especially to those who are of limited means. As articulated in a discussion of attorney fees in class-action suits and that has equal applicability to a disability practice:

We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit .... The dimensions of the undertaking are awesome .... Some plaintiffs' lawyers have worked on cases before me for as long as ten years and spent a substantial portion of their billable time each year on the effort. At the end they may have received a fee in the millions of dollars. However, averaged out over the years and subtracting taxes and the expenses of a law office, it averages out to a very moderate payment. It certainly does not equate with any bonanza or pot of gold.

*Muehler v. Land O'Lakes, Inc.,* 617 F.Supp. 1370, 1376 (D.Minn.1985). The same can be said of the attorneys who undertake the very important role of representing social security claimants. A contingent-fee may equate to payment which is above their hourly rate. However, when balanced with the risk undertaken by the attorney and the possibility of no payment at all, such a situation does not equate to a "windfall." The Court does not wish to discourage or make it financially impossible for attorneys to undertake this important role in our judicial system.

■ In this case, counsel's client contracted with him after the claim had been denied at the Reconsideration stage of the administrative process. Counsel performed legal services for his client before the Social Security Administration. The fee for that work is of no concern to this Court. When all administrative appeals had been exhausted, counsel brought suit before this Court where benefits to his client were awarded. Counsel is a long time member of the Iowa State and Federal Bar. Counsel is an experienced practitioner of Social Security law. When he accepted his clients case, he did not expect to lose. When he filed the Complaint in this Court, and throughout the course of the case, he argued persuasively that substantial evidence on the record as a whole supported an award of benefits to his client. The fee being requested is neither unforeseen, nor is it due to circumstances outside the expectation of any lawyer who accepts a case for litigation. The requested fee, therefore, is not a windfall.

The record before the Court shows the following regarding the merits of Plaintiffs claim that was granted by the district court's merits decision. Like most Social Security cases, it involved an argument about the application of "substantial evidence." A review of the Court's order and judgment in this case shows that the Plaintiff prevailed because the Administrative Law Judge (ALJ) rejected the opinion of both the treating and consulting physicians. The rationale of the ALJ that Plaintiff could return to her work was without any support in the factual record. The Court also reversed and awarded benefits because a vocational expert at the hearing opined that given plaintiff's limited ability to handle stress, and because of the evidence of Plaintiff quickly decompensating during her manic period, substantial gainful activity was not possible. The vocational expert's testimony provided the court with substantial evidence that remanding this case would only delay Plaintiff receipt of benefits to which she was entitled at least as early as 2001. The fact that the government did not appeal the decision and also the government's concession (by way of settlement) to Plaintiff's EAJA entitlement provide further support for the relatively straight forward nature of the underlying claim. Plaintiff's lawyer in his submissions in support of his fee does not claim otherwise. The Court can

find no error in the character of representation that Johnsen provided his client.[3]

In the affidavit submitted with his supplemental motion, counsel recites that he has practiced social security/supplemental security income law for twenty years and that his hourly rate is $200.00 per hour. He also provided documentation showing that he worked twenty-two and one-fourth hours in this Court. If the $7,293.50 requested, is broken down to an hourly rate, the Johnsen's fee would be $327.80 per hour. This is not to say that the Court's determination should be reduced to an hourly computation, but in this case, it clearly shows that the contingency fee was reasonable and Johnsen's requested fees do not result in a "windfall."

## CONCLUSION AND ORDER

In this case, the Court does not believe that the contingent-fee agreement or the $7,293.50 requested produces an "unreasonable fee". The Court's task in this inquiry is not simply to "rubber-stamp" the contingency-fee agreement, but rather is to ensure that both the claimant's benefits are protected as well as the attorney's rights to payment for effective assistance of counsel. Lawyers who represented disabled applicants pursuing judicial review remedies are entitled to be paid reasonable compensation for their work as much as lawyers performing other types of legal work.

Counsel is awarded a fee in the amount of $7,293.50 to be paid from Plaintiff's past due benefits. As counsel knows, this is without prejudice to his seeking an award from the Commissioner for his work performed before the agency. Counsel is also aware the lesser of the § 406(b) fee and the EAJA fee is to be refunded to his client.

IT IS SO ORDERED.

---

**3.** The Court notes that one of the factors cited in *Gilsbretch* whether or not the attorney was responsible for unnecessary delays so that social security benefits would accrue. Johnsen requested only one brief continuance, from August 2, 2004 until August 16, 2004. The Court cannot say that this brief extension was for the purpose of anything other than to ensure proper representation of his client.