**Nicolas Allen ENDERLE, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 3:13–cv–132 RP–CFB.**

United States District Court, S.D. Iowa, Davenport Division.

Signed March 26, 2014.

Hugh M. Field, Kate Baratta Mitchell, Beecher Field Walker Morris Hoffman & Johnson, Waterloo, IA, for Plaintiff.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, Stephanie Johnson Wright, United States Attorneys Office, Cedar Rapids, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Nicolas Allen Enderle, filed a Complaint in the United States District Court for the Northern District of Iowa on September 11, 2013, seeking review of the

Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The case was transferred to the Southern District of Iowa on December 11, 2013. This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

On March 10, 2014, the Commissioner moved to remand this case to give the ALJ the opportunity to fully consider Plaintiff's impairments, to reevaluate medical records and reconsider the medical source evidence, to determine whether Plaintiff meets or equals a listing-level impairment, and to give further consideration to Plaintiff's residual functional capacity. Plaintiff has not resisted the motion to remand. For the reasons set forth below, the Motion is granted.

Plaintiff filed an application for benefits November 15, 2010. Tr. at 106–07. Plaintiff, whose date of birth is March 30, 1978, (Tr. at 106) was 33 years old at the time of the hearing on March 26, 2012, before Administrative Law Judge John E. Sandbothe (ALJ). Tr. at 15–32. The ALJ issued a Notice Of Decision—Unfavorable on May 9, 2012. Tr. at 44–55. The Appeals Council declined to review the ALJ's decision on July 23, 2013. Tr. at 1–6. Thereafter, Plaintiff commenced this action.

In his application for Title II benefits, Plaintiff stated he became unable to work because of his disabling condition on December 4, 2009. Tr. at 160. The ALJ found that Plaintiff is insured for Title II benefits until December 31, 2014. At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity after December 4, 2009. At the second step, the ALJ found Plaintiff's severe impairments to be hearing loss, obesity, and irritable bowel syndrome. Tr. at 49. The ALJ found that

none of these impairments, alone or in combination, were severe enough to qualify for benefits at the third step of the sequential evaluation. At the fourth step, the ALJ found that Plaintiff retains the residual functional capacity for light work except he is unable to be around hazards and noise above "a normal office," and that he should have constant access to a bathroom. Tr. at 50. The ALJ found that Plaintiff is able to perform his past relevant work as a bagger and customer service representative. Tr. at 54. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which he applied. Tr. at 55.

## EVIDENCE REVIEW

On December 12, 2008, Plaintiff saw Michael J. Malin, M.D. Plaintiff's chief complaint was hearing loss and tinnitus. Plaintiff said the tinnitus was getting worse, especially at night when he took out his hearing aids. It was noted that Plaintiff was also being treated for irritable bowel syndrome, general anxiety disorder, sensorineural hearing loss, asthma and depressive disorder. Tr. at 249. Plaintiff was given information about tolerating and living with tinnitus and a prescription of clonazapam. He was also referred to an ENT physician for treatment of the hearing loss. Plaintiff's weight was noted to be 298 pounds. Tr. at 250. Dr. Malin also renewed Plaintiff's prescription for Lexapro. Tr. at 251.

On February 2, 2009, Plaintiff asked Dr. Malin for a different medication for depression because of the cost of Lexapro. The doctor discontinued Lexapro and prescribed citalopram. The doctor also increased the dosage of clonazepam. Tr. at 246–47. Plaintiff's weight was 298 pounds. Tr. at 247.

On February 12, 2009, Plaintiff complained of head pressure and congestion, a

sore throat and hoarseness. He also said his left ear and sinus was plugged. The doctor diagnosed Otitis Media[1]. Plaintiff's weight was 296 pounds. Tr. at 244–45. Plaintiff returned to the doctor on February 16, 2009, and reported that the illness had settled in his chest. He said he was hoarse, coarse, wheezy, and short of breath. The doctor diagnosed acute bronchitis and acute sinusitis. Tr. at 242–43.

On March 5, 2009, Plaintiff saw Dr. Malin after hitting a deer earlier that day. Plaintiff complained of pain in his flanks and low back. Although he complained of aches, he was able to move around and didn't complain of radicular symptoms. The doctor diagnosed lumbar region sprain. Plaintiff's weight was 295 pounds. Tr. at 240–41.

On June 2, 2009, Plaintiff saw Dr. Malin for a benign transient tremor in his right hand. Watchful waiting was advised. Tr. at 237–38. Plaintiff's weight was 311 pounds. Tr. at 238.

On June 17, 2009, Plaintiff saw Bradley D. Cutting, M.D. for nasal congestion. Tr. at 234–36. Plaintiff's weight was 305 pounds. Tr. at 235.

On July 29, 2009, Plaintiff saw Charles R. Radmer, D.O. Plaintiff reported a two week history of abdominal cramping associated with irritable bowel syndrome. Plaintiff said he felt bloated and miserable. Tr. at 231. On physical exam, Plaintiff's weight was 308 pounds. Tr. at 232. The diagnosis was abdominal pain, generalized. The doctor ordered a prescription of Amitiza. Tr. at 333.

On September 19, 2009, Plaintiff saw Dr. Radmer with a chief complaint of fatigue which had started 4 days before the visit. Plaintiff also complained of some nausea and vomiting. Tr. at 225. Current weight was listed as 310 pounds. Tr. at 226. The diagnosis was viral syndrome and a prescription for phenergan was written. Tr. at 227.

Plaintiff saw Dr. Malin on September 21, 2009, for the symptoms complained of in the previous visit. Plaintiff reported that he had missed 4 days of work because of the nausea and fatigue. Tr. at 222. Diagnoses were viral infection and acute upper respiratory infection.

On December 7, 2010, audiologist M'elizabeth R. Maatta, AuD, wrote that Plaintiff was first seen in March 2005 for constant tinnitus and a moderate sensorineural hearing loss with impaired auditory discrimination. Plaintiff was fitted for hearing aids and was provided an amplified telephone so he could work as a customer assistant. By October 13, 2009, Plaintiff's hearing loss had progressed to the moderately severe range, and he needed hearing aids in most situations. Nevertheless, Ms. Maatta wrote: "With proper amplification he can understand speech in quiet. Background noise will impair communication." Tr. at 255.

On March 9, 2011, Plaintiff saw Dov Rotenberg, M.D. because of his hearing loss. Plaintiff reported that he hearing aids were being repaired. In addition to bilateral tinnitus, Plaintiff described a increasingly severe hearing loss over the previous decade. After an examination and review of an audiogram, Dr. Rotenberg diagnosed bilateral sensorineural hearing loss with associated tinnitus, eustachian tube dysfunction and chronic rhinitis. Tr. at 271. The doctor recommended updated hearing aids and hearing conservation measures. Plaintiff was given a prescription for Flonase. The doctor also recommended that Plaintiff "should lose

---

1. An *inflammation of the ear caused by passage of nasopharyngeal secretions through* the eustachian tube. *Stedman's Medical Dictionary*, 27th Edition.

considerable weight, he is at significant risk for obstructive sleep apnea." Tr. at 272.

Plaintiff was seen at the University of Iowa Hospitals and Clinics (the University of Iowa) on May 2, 2011. Plaintiff reported a history of bilateral hearing loss for which he was wearing hearing aids. Plaintiff complained of several episodes of left chest pain, mild transient, primarily after eating salty foods. He denied rapid/irregular heartbeat, shortness of breath, or diaphoresis. Tr. at 276. On physical examination, Plaintiff's weight was 326 pounds with a body mass index (BMI) of 45.27. Diagnoses were gastroesophageal reflux disease (GERD), chest pain, elevated blood pressure, obesity, and rule out allergic rhinitis. The plan was to refer Plaintiff to the ENT clinic for a hearing evaluation. Plaintiff was also counseled about diet and exercise for weight loss. Tr. at 278.

When Plaintiff was seen at the University of Iowa on June 6, 2011, he reported that he had drastically reduced his salt intake and that Gaviscon had worked well for the chest discomfort. Plaintiff reported a seven to eight year history of irritable bowel syndrome which consisted of frequent episodes of alternating constipation and diarrhea. He said that symptoms were worse when he was under stress. Tr. at 279. Plaintiff's weight was 323 pounds. Tr. at 280.

Plaintiff was seen at the University of Iowa on July 13, 2011. Tr. at 282. The chief complaint was abdominal pain and diarrhea. Tr. at 282. Plaintiff's weight was 323 pounds. Tr. at 283. An ultrasound of the abdomen and gallbladder was ordered. Tr. at 284

A University of Iowa treatment note dated August 11, 2011, stated that the ultrasound had been ordered, but Plaintiff had not been notified of a date for the study. Plaintiff reported being seen in the ENT clinic and being told he needs hearing aids (see Tr. at 314–15). Tr. at 285. Plaintiff's weight was 322 pounds. Tr. at 286. It was noted that Plaintiff's hearing was markedly diminished. It was also noted that his blood pressure was within normal limits. Tr. at 287.

Plaintiff underwent an ultrasound on September 2, 2011. The findings were: hepatosplenomegaly; hyperechoic liver parenchyma—a nonspecific finding which can be seen with fatty infiltration or hepatocellular disease; the pancreas was suboptimally visualized due to overlying bowel gas; otherwise unremarkable examination. Tr. at 288.

Plaintiff was seen at the University of Iowa on September 7, 2011. Plaintiff complained of recurrent mid abdominal pain which was radiating into his right flank area. It was noted that neither a trial of over the counter Prilosec nor a prescription of Dicyclomine had helped. The pain was described as sharp and cramping, and was moderate to severe. Tr. at 288. Plaintiff's weight was 319 pounds. A referral was made to the internal medicine clinic for further evaluation. Tr. at 290.

Plaintiff was seen at the emergency room of the University of Iowa on September 19, 2011, because of abdominal pain. Plaintiff also reported chronic but stable low back pain. Tr. at 291. On physical examination, Plaintiff's weight was 320 pounds with a BMI of 43.40. Tr. at 292. Plaintiff was given a prescription for Levsin and "a few hydrocodone for pain as needed." An order was placed for a GI consultation.

On October 11, 2011, Plaintiff's back was x-rayed at the University of Iowa. There was anatomic alignment of the lumbar spine with no evidence of fracture or dislocation. The intervertebral disc spaces were maintained and the sacroiliac joints were unremarkable. Tr. at 299.

Plaintiff was also seen for his abdominal pain on October 11, 2011. Plaintiff reported that when the pain was worse, he had pain in the right shoulder as well as his low back. Tr. at 300. Esopagogastroduodenoscopy (EGD) and colonoscopy were ordered to rule out celiac disease, gastritis, esophagitis, colitis, and polyps. Plaintiff was given a seven day course of flagyl for treatment of small bowel bacterial overgrowth. Tr. at 302. Plaintiff's weight was 315 with a BMI of 42.72. Plaintiff underwent endoscopy on October 24, 2011. Tr. at 304. In the esophagus, there was no clear inflammation, no esophageal varices and no hiatal hernia. In the stomach, there was normal mucosa and normal folds, no antritis, and a small polyp which was taken for biopsy. The duodenum appeared normal. Plaintiff also underwent a colonoscopy which did not show inflammation or diverticular disease. Tr. at 305.

Plaintiff was seen at the University of Iowa on November 7, 2011. Tr. at 310–13. Plaintiff reported that his symptoms were getting worse, that he had a lot of abdominal pain which was interfering with his activities. Tr. at 310. On physical examination, Plaintiff's weight was 314, with a BMI of 42.61. Tr. at 313.

## ADMINISTRATIVE HEARING

Plaintiff testified that he was prevented from working by his hearing and his irritable bowel syndrome. He said because of constipation and diarrhea, he often needs to change clothes several times a day. Tr. at 21. After Plaintiff testified, the ALJ called Carma Mitchell to testify as a vocational expert. The ALJ asked the vocational expert to consider a 34 year old man with education and past work of the Plaintiff. "He's been diagnosed with hearing loss and irritable bowel syndrome." Tr. at 29. The ALJ posed a hypothetical question which limited Plaintiff to no hazards or noise above a normal office level and the need to have constant access to a bathroom. Tr. at 29–30. When asked about the effect of two scheduled breaks each morning, the vocational expert testified that competitive work is not possible. Tr. at 30.

## DISCUSSION

We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue,* 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart,* 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola [v. Astrue],* 480 F.3d [885] at 886 [ (8th Cir.2007) ] ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue,* 551 F.3d 792, 798 (8th Cir.2008.) In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

■ The Court has throughly reviewed the record of this case and is in agreement with the Commissioner's Motion to remand. In addition to what was recited in the Motion, the Court would remind the ALJ to give full consideration to Social Security Ruling 02–1p (the SSR), the purpose of which is to provide guidance on the Commissioner's policy concerning the evaluation of obesity in disability claims. As noted above in the review of the medical evidence, Plaintiff's weight has been consistently reported as being near or above 300 pounds with a body mass index in the mid 40s. According to the SSR, a BMI equal to or greater than 40 is termed extreme and represents the greatest risk for developing obesity-related impairments, although this does not correlate with any specific degree of functional loss. The ALJ found that Plaintiff's severe impairments include obesity, but on remand the ALJ should consider the instructions for evaluation of the impairment at the remaining steps of the sequential evaluation. *See also Stone v. Harris,* 657 F.2d 210, 212 (8th Cir.1981) ("The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte.") In the opinion of the Court, the SSR is consistent with the sentiments expressed by Judge Peck in *Stone. See also, Roberts v. Barnhart,* 283 F.Supp.2d 1058, 1067 (S.D.Iowa 2003); and, *See generally,* Christopher E. Pashler, *Mirror, Mirror on the Wall: Stigma and Denial in Social Security Disability Hearings,* 43 U. Mem. L.Rev. 419 (2012).

### CONCLUSION AND DECISION

The Court agrees with the parties that the proper remedy in this case is a remand for further consideration. The final decision of the Commissioner is not supported by substantial evidence on the record as a whole. This case is reversed and remanded.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b) [2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa July 15, 2005).

IT IS SO ORDERED.

---

2. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."